[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 104 
 On Remand from the Supreme Court of the United States
This cause is on remand from the Supreme Court of the United States. The question is whether the Federal Arbitration Act ("the Act") requires arbitration of the claims at issue.
The original opinion of this Court is published at628 So.2d 354. The essential facts of the case are set out in that opinion, as follows:
 "The defendants, Allied-Bruce Terminix Companies, Inc., . . . and Terminix International Company [hereinafter collectively 'Terminix'] . . . appeal from an order of the trial court denying their motion to compel arbitration of the tort and breach of contract claims filed against them by Michael Dobson, Wanda Dobson, Steven Gwin, and Jan Gwin. The issue for our review is whether the arbitration clause contained in a termite bond is enforceable under the Federal Arbitration Act, 9 U.S.C. § 1 et seq. . . .
 "In August 1987, Steven Gwin allowed the termite bond on his house in Fairhope, Alabama, to expire, and he purchased a replacement bond from Terminix Service. Terminix Service is an Arkansas corporation that does business in several states. . . . The bond was guaranteed by Terminix International, a limited partnership that has its principal place of business in Memphis, Tennessee.
 "In 1991, Steven and Jan Gwin agreed to sell the house to Michael and Wanda Dobson. The sales contract required the Gwins to provide written evidence from a licensed pest control company that the company had performed a visual inspection of the house and had observed no active infestation of termites or damage from active infestation. The contract also required that the termite bond be transferred to the Dobsons at the closing of the sale. Because of the existing bond on the house, Terminix Service agreed to perform the inspection and to issue the required statement [free of charge]. At the closing, the Gwins furnished Dobson with a standard Veterans' Administration . . . form; the V.A. form [stated] that Terminix Service had observed no visible evidence of active infestation during the inspection.
 "The Dobsons later discovered termite damage to the house, and they brought an action against the Gwins, alleging fraud, and against Terminix Service and Terminix International, alleging fraud in connection with the representations in the V.A. form, and alleging breach of contract. The Gwins cross-claimed against Terminix Service and Terminix International. Terminix Service and Terminix International moved to stay the proceedings and to compel the Dobsons and the Gwins to submit their claims to arbitration pursuant to an arbitration clause in the bond. The trial court denied this motion, and the defendants [appealed]."[1]
628 So.2d at 354-55.
This Court held that the Act was inapplicable because, it held, the connection between *Page 105 
the termite protection plan and interstate commerce was too slight, in that the parties did not contemplate substantial interstate activity when they entered into the contract. 628 So.2d at 356. Thus, we upheld the denial of the stay, based upon § 8-1-41(3), Ala. Code 1975, which prohibits specific enforcement of "[a]n agreement to submit a controversy to arbitration." The United States Supreme Court reversed, holding that the Act's language, making enforceable an arbitration provision in "a contract evidencing a transaction involving commerce," is applicable "to the limits of Congress' Commerce Clause power," and that, because the transaction in this case, in fact, involved interstate commerce, the Act was applicable and preempted state law. Allied-Bruce Terminix Cos. v. Dobson,513 U.S. 265, ___, 115 S.Ct. 834, 837, 130 L.Ed.2d 753 (1995);9 U.S.C. § 2. The Supreme Court remanded the cause to this Court for further proceedings consistent with its opinion.
The key operative provisions of the Federal Arbitration Act are §§ 3 and 4. Section 3 provides:
 "If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration."
(Emphasis added.) Section 4 provides:
 "A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement. Five days' notice in writing of such application shall be served upon the party in default. Service thereof shall be made in the manner provided by the Federal Rules of Civil Procedure. The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. The hearing and proceedings, under such agreement, shall be within the district in which the petition for an order directing such arbitration is filed. If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof. If no jury trial be demanded by the party alleged to be in default, or if the matter in dispute is within admiralty jurisdiction, the court shall hear and determine such issue. Where such an issue is raised, the party alleged to be in default may, except in cases of admiralty, on or before the return day of the notice of application, demand a jury trial of such issue, and upon such demand the court shall make an order referring the issue or issues to a jury in the manner provided by the Federal Rules of Civil Procedure, or may specially call a jury for that purpose. If the jury find that no agreement in writing for arbitration was made or that there is no default in proceeding thereunder, the proceeding shall be dismissed. If the jury find that an agreement for arbitration was made in writing and that there is a default in proceeding *Page 106 
thereunder, the court shall make an order summarily directing the parties to proceed with the arbitration in accordance with the terms thereof."
(Emphasis added.)
Although the United States Supreme Court has held that the substantive provisions of the Act, §§ 1 and 2, are applicable in state courts as well as federal courts, see Southland Corp.v. Keating, 465 U.S. 1, 12, 104 S.Ct. 852, 859, 79 L.Ed.2d 1
(1984), the Court has stated that it has not held that §§ 3 and 4 are applicable in state courts. See Volt Info. Sciences, Inc.v. Board of Trustees of Leland Stanford Junior Univ.,489 U.S. 468, 476-77 and n. 6, 109 S.Ct. 1248, 1254-55 and n. 6,103 L.Ed.2d 488 (1989); Southland Corp. v. Keating, 465 U.S. at 16
n. 10, 104 S.Ct. at 861 n. 10. While the Act preempts state law that actually conflicts with the federal policy favoring arbitration, it does not prevent enforcement of agreements to arbitrate under state rules of arbitration. Volt Info.Sciences, 489 U.S. at 477-79, 109 S.Ct. at 1254-56 (stating that "[the Act] contains no express pre-emptive provision, nor does it reflect a congressional intent to occupy the entire field of arbitration"); cf. Southland Corp., 465 U.S. at 24,104 S.Ct. at 865 (O'Connor, J., dissenting) (stating that "the Court reads § 2 to require state courts to enforce § 2 rights using procedures that mimic those specified for federal courts by FAA §§ 3 and 4"). However, § 8-1-41(3), Ala. Code 1975, provides that "[a]n agreement to submit a controversy to arbitration" cannot be specifically enforced; thus, Alabama has not developed rules of arbitration for dealing with pre-dispute agreements independent from the law that has developed in cases in which the Federal Arbitration Act applied. Because the United States Supreme Court has expanded the applicability of the Act to state courts and because our circuit courts will now face more issues concerning arbitration, we look to 9 U.S.C. § 3
and 4, as interpreted herein and to the extent they are applicable and consistent with otherwise-provided procedures applicable in this state, as providing information on how the federal courts would apply the Act.[2]
On their face, §§ 3 and 4 appear to provide separate procedures for distinct situations, one where an action has been brought in a court upon an issue arguably referable to arbitration and the other where a party seeking arbitration petitions a court for an order requiring the other party to submit to arbitration. In practice, however, it is common for parties to seek relief under both provisions: a party involved in litigation, ordinarily brought by a party with whom the moving party has an arbitration agreement, may move the court for an order compelling arbitration under § 4 and for a stay of proceedings pending arbitration under § 3. See, e.g., VoltInfo. Sciences, 489 U.S. at 471 n. 2, 109 S.Ct. at 1251 n. 2;Perry v. Thomas, 482 U.S. 483, 484-85, 107 S.Ct. 2520, 2522-23,96 L.Ed.2d 426 (1987). The United States Supreme Court has recognized the interrelatedness of the provisions, see DeanWitter Reynolds Inc. v. Byrd, 470 U.S. 213, 215,105 S.Ct. 1238, 1239, 84 L.Ed.2d 158 (1985) (stating that "The Act authorizes parties to an arbitration agreement to petition a federal district court for an order compelling arbitration of any issue referable to arbitration under the agreement," and citing both § 3 and § 4); Moses H. Cone Memorial Hosp. v.Mercury Constr. Corp., 460 U.S. 1, 22, 103 S.Ct. 927, 940,74 L.Ed.2d 765 (1983) (describing §§ 3 and 4 as "parallel devices for enforcing an arbitration agreement").
Thus, the nature of a court's inquiry in determining whether "the issue involved in [a] suit or proceeding is referable to arbitration under such an agreement" pursuant to § 3 is essentially the same as the nature of a court's inquiry in determining whether "the making of the arbitration agreement or the failure, neglect, or refusal to perform the same" is "in issue" pursuant to § 4. Whether an issue is referable to arbitration "under such an agreement" and whether a party is in default of an arbitration agreement because of "the failure, neglect, or refusal to perform the same" are questions that necessarily *Page 107 
require analysis of the claims asserted and of the language of the arbitration agreement involved. In other words, the preliminary duties of a court in ruling on a motion pursuant to § 3 or § 4 may include determining whether the language or "scope" of the arbitration clause is broad enough to encompass the claims sought to be arbitrated. See Perry v. Thomas,482 U.S. at 492, 107 S.Ct. at 2527 (holding that "whether the arbitration provision inures to the benefit of appellants and may be construed, in light of the circumstances surrounding the litigants' agreement, to cover the dispute that has arisen" is "a straightforward issue of contract interpretation" and "may be resolved on remand"); Mitsubishi Motors Corp. v. SolerChrysler-Plymouth, Inc., 473 U.S. 614, 626, 105 S.Ct. 3346,3353, 87 L.Ed.2d 444 (1985) (stating that "the first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute");Southland Corp., 465 U.S. at 15 n. 7, 104 S.Ct. at 860 n. 7 ("We find the [arbitration clause] language . . . broad enough to cover such claims"); Genesco, Inc. v. T. Kakiuchi Co.,Ltd., 815 F.2d 840, 844 (2d Cir. 1987) (stating that one task of "a court asked to stay proceedings pending arbitration in a case covered by the Act" is to "determine the scope of that agreement"); Morgan v. Smith Barney, Harris Upham Co.,729 F.2d 1163, 1165 (8th Cir. 1984) (holding: "In determining the propriety of a section three stay, a federal court 'may consider only issues relating to the making and performance of the agreement to arbitrate.' . . . Consequently, the only issue before this court is whether the scope of arbitrable disputes under Rule 347 includes Morgan's slander and prima facie tort claims."); Creative Securities Corp. v. Bear Stearns Co.,671 F. Supp. 961 (S.D.N.Y. 1987), affirmed, 847 F.2d 834 (2nd Cir. N Y 1988) (examining the scope of an arbitration clause and concluding that one claim was not arbitrable).
Such a determination must begin with a recognition of the federal policy favoring arbitration, which is evidenced in the Act. The United States Supreme Court has stated:
 "The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or like defense to arbitrability."
Moses H. Cone Memorial Hosp., 460 U.S. at 24-25,103 S.Ct. at 941; accord Volt Info. Sciences, 489 U.S. at 476,109 S.Ct. at 1254; cf. United Steelworkers of America v. Warrior GulfNavigation Co., 363 U.S. 574, 582-83, 80 S.Ct. 1347, 1352-53,4 L.Ed.2d 1409 (1960). We note:
 "Nevertheless, the question of whether a contract's arbitration clause requires arbitration of a given dispute remains a matter of contract interpretation. Such a determination rests on the intent of the parties. A party may not be required to arbitrate a dispute it did not agree to arbitrate; '[i]f the contract does not [provide for arbitration], then no Federal law requires arbitration.' "
Seaboard Coast Line R.R. v. Trailer Train Co., 690 F.2d 1343,1348 (11th Cir. 1982) (quoting Commercial Metals Co. v. Balfour,Guthrie Co., Ltd., 577 F.2d 264, 266 (5th Cir. 1978)) (quoted in Ex parte Warrior Basin Gas Co., 512 So.2d 1364, 1368
(Ala. 1987)) (citations omitted); accord Old Republic Ins. Co.v. Lanier, 644 So.2d 1258, 1260 (Ala. 1994); A.G. Edwards Sons, Inc. v. Clark, 558 So.2d 358, 362 (Ala. 1990).[3] "[T]he interpretation of an arbitration agreement within the scope of the Act" is to be governed by "general state-law principles of contract interpretation." *Page 108 Volt Info. Sciences, 489 U.S. at 475, 109 S.Ct. at 1254. Those general principles of contract interpretation, however, must be those that apply to contracts generally: "A court may not, . . . in assessing the rights of litigants to enforce an arbitration agreement, construe that agreement in a manner different from that in which it otherwise construes nonarbitration agreements under state law." Perry v. Thomas,482 U.S. at 493 n. 9, 107 S.Ct. at 2527 n. 9.
After assessing the claims asserted and interpreting the scope of the arbitration agreement involved, if a court determines that "the making of the arbitration agreement or the failure, neglect, or refusal to perform the same" is "in issue," then § 4 of the Act expressly provides that the party alleged to be in default may demand a jury trial on the issue. Because the nature of a court's inquiry in determining whether "the making of the arbitration agreement or the failure, neglect, or refusal to perform the same" is "in issue" pursuant to § 4 is essentially the same as the nature of a court's inquiry in determining whether "the issue involved in [a] suit or proceeding is referable to arbitration under such an agreement" pursuant to § 3; because the United States Supreme Court has recognized that §§ 3 and 4 are "parallel devices for enforcing an arbitration agreement," Moses H. Cone MemorialHosp., 460 U.S. at 22, 103 S.Ct. at 940; because that Court has held that Congress could not have intended the rules to differ depending upon which party to the arbitration agreement first invokes the assistance of a court, Prima Paint Corp. v. Flood Conklin Mfg. Co., 388 U.S. 395, 404, 87 S.Ct. 1801, 1806,18 L.Ed.2d 1270 (1967); and because the Constitution of Alabama provides that "the right of trial by jury shall remain inviolate," Const. of Ala. 1901, Art. 1, § 11, we hold that a party may also demand a jury trial under proceedings equivalent to those provided in § 3, if the court determines that whether "the issue involved in such suit or proceeding is referable to arbitration under such an agreement" is "in issue."[4]
A court's duty in determining whether the making or the performance of an agreement to arbitrate is in issue is analogous to its duty in ruling on a motion for summary judgment. Cf. Par-Knit Mills, Inc. v. Stockbridge Fabrics Co.,Ltd., 636 F.2d 51, 54 n. 9 (3d Cir. 1980). The court is to hold a hearing and determine whether there are genuine issues concerning the making or performance of an agreement to arbitrate, as a federal court would in proceeding under § 4. Mere demand for a jury trial is insufficient to create a triable issue on these questions. Saturday Evening Post Co. v.Rumbleseat Press, 816 F.2d 1191, 1196 (7th Cir. 1987) (noting that the party demanding a jury trial "can get one only if there is a triable issue concerning the existence or scope of the agreement"). As to the threshold issue of whether an arbitration agreement exists between the parties (the "making" of an agreement), federal courts have held: "To make a genuine issue entitling the plaintiff to a trial by jury, an unequivocal denial that the agreement had been made was needed, and some evidence should have been produced to substantiate the denial," Almacenes Fernandez, S.A. v. Golodetz, 148 F.2d 625,628 (2d Cir. 1945); and "the party must make at least some showing that under prevailing law, he would be relieved of his contractual obligation to arbitrate if his allegations proved to be true [and] he must [also] produce at least some evidence to substantiate his factual allegations." Dillard v. MerrillLynch, Pierce, Fenner Smith, Inc., 961 F.2d 1148, 1154 (5th Cir. 1992). We hold *Page 109 
that a similar showing is required to put in issue matters relating to the performance of an arbitration agreement, such as whether the claims asserted are encompassed by the language or scope of the agreement. When the interpretation of the agreement is in dispute, however, it may be that submission of the agreement itself is the only evidence required. Of course, if there are genuine issues as to the making or performance of the agreement to arbitrate, and if the party alleged to be in default demands a jury trial, then § 4, and our interpretation of § 3, provide for a trial on the issue or issues.
In this case, Terminix moved to stay the proceedings and to compel the Dobsons and the Gwins to submit their claims to arbitration. The parties' arguments in the circuit court focused upon the applicability of the Act. Now, after the United Supreme Court's opinion in Allied-Bruce Terminix Cos. v.Dobson, supra, and this Court's analysis here, the parties' arguments in the circuit court would undoubtedly be different.[5]
Thus, this Court has considered remanding this case to allow the parties to develop such arguments. Upon hearing the parties' arguments, if the circuit court determined that there were triable issues concerning the making or performance of the arbitration agreement and if the Dobsons demanded a jury trial on such issues, then the circuit court would have to order such a trial. However, the circuit court would have the authority, if there are no triable issues, to decide certain issues as a matter of law, such as whether there is a valid and enforceable agreement to arbitrate and, if so, whether the claims asserted are encompassed by the agreement. See Par-Knit Mills, 636 F.2d at 54; Saturday Evening Post, 816 F.2d at 1196.[6] Thus, if the issues presented here are not triable issues and may be decided as a matter of law, there is no need to remand the case for the parties to develop their arguments.
As indicated in footnote 5, Terminix and the Dobsons have filed briefs in this Court arguing their respective positions on questions presented on remand.[7] The Dobsons argue that, even though the Federal Arbitration Act applies to the termite protection plan, Terminix has waived its right to proceed under the arbitration clause and that the arbitration clause does not extend to the tort claims brought against Terminix.
Initially, we find no merit to the Dobsons' contention that Terminix has waived its right to proceed under the arbitration clause. Specifically, the Dobsons argue that Terminix waived that right by participating in this litigation for several months before moving to stay the proceedings pending arbitration. "Substantial invocation of the litigation process" is a factor that may tend to show that a party has waived the right to arbitrate. Ex parte Merrill Lynch, Pierce, Fenner Smith, Inc., 494 So.2d 1 (Ala. 1986) (quoting American DairyQueen Corp. v. Tantillo, 536 F. Supp. 718, 722 (M.D.La. 1982)). That factor, however, must be accompanied by a showing that the party opposing arbitration has been prejudiced by the other party's participation in the litigation. Ex parte MerrillLynch, 494 So.2d at 3. Here, even if we were to assume that Terminix's filing responsive pleadings and its *Page 110 
conducting discovery constitute "substantial invocation of the litigation process," the Dobsons have alleged no specific prejudice occasioned by Terminix's activities in this litigation before it asserted the right to proceed under the arbitration clause. Therefore, there are no triable issues, and, as a matter of law, the Dobsons have not shown that Terminix has waived its right to enforce the arbitration clause.
As to whether the claims brought by the Dobsons are within the scope of the termite protection plan's arbitration clause, we note that the Dobsons' complaint, as amended, alleged, in count one, that the Gwins and Terminix had fraudulently misrepresented that there was no live infestation of termites in the house; in count two, that Terminix negligently inspected the house before the sale; in count three, that the Gwins fraudulently concealed that the house was infested with live termites; and, in count four, that Terminix breached the termite protection plan transferred by the Gwins to the Dobsons by failing to protect the house from termite infestation and by failing to arrange, and to pay for, all of the repairs necessary to correct the damage caused by the termite infestation. The Gwins' cross-claim alleged, in count one, that Terminix breached the termite protection plan by allowing a termite infestation to damage the house; and, in count two, that Terminix was negligent in the way it treated the house for termites and in the manner in which it performed the general conditions of the termite protection plan.
The arbitration clause at issue here states, in pertinent part: "The Purchaser and Terminix agree that any controversy or claim between them arising out of or relating to the interpretation, performance or breach of any provision of this agreement shall be settled exclusively by arbitration."[8]
The essential question is whether the arbitration clause applies to the Dobsons' claims. The answer to that question is a matter of contract interpretation, which interpretation is guided by the intent of the parties, and which intent, absent ambiguity in the clause, is evidenced by the plain language of the clause. Ex parte Warrior Basin Gas Co., supra.[9] Whether a contract is ambiguous is a question of law to be determined by the court. Austin v. Cox, 523 So.2d 376 (Ala. 1988). The language of this arbitration clause is not ambiguous; it applies to "any controversy or claim . . . arising out of or relating to the interpretation, performance or breach of any provision of this agreement." The terms "relating to" have been interpreted more broadly than the terms "arising out of," seeOld Republic Ins. Co. v. Lanier, supra; therefore, we will focus on whether the Dobsons' claims "relate to" the interpretation, the performance, or the breach of any provision contained in the termite protection plan.
Except for the Dobsons' claim alleging breach of contract, their claims against Terminix arise from Terminix's inspection for termite damage and its issuance of the V.A. form, or "clearance letter," provided to the Dobsons on behalf of the Gwins pursuant to the sale of the house: the Dobsons allege that Terminix fraudulently misrepresented information in the clearance letter and that Terminix negligently performed the inspection upon which the information contained in the clearance letter was based. No provision in the termite protection plan concerns issuance of clearance letters upon the sale of the property subject to the plan.[10] Representatives *Page 111 
of Terminix testified that Terminix issues such letters for anyone who asks for the service and pays a fee; that Terminix performs the service for individuals and on properties not covered by Terminix termite protection plans; that, at the time the letter was issued on the Gwins' house, the service was performed free of charge because the Gwins were covered by a Terminix termite protection plan; and that the service is no longer performed free of charge for holders of Terminix termite protection plans.
Thus, the remaining question is whether the fact that the clearance letter was issued for the house free of charge because the Gwins were covered by a Terminix termite protection plan justifies a conclusion that the claims based upon the clearance letter and the inspection relate to the interpretation, the performance, or the breach of any provision contained in the termite protection plan. Terminix asserts that "the written report issued by Terminix Service in this case was provided to Gwin as part of the termite protection plan." Terminix's citations to the record on this point, however, do not support the contention. Further, the contention is not supported by the language of the termite protection plan, and it is contrary to the testimony of Terminix representatives summarized above. Terminix also argues that "the tort claims asserted by Dobson against Terminix Service and Terminix International clearly arise out of the rights and relationships established by the termite protection plan." However, the first three counts of the Dobsons' complaint do not mention the termite protection plan, nor would proof of the claims contained in those counts require reference to the plan, or even the existence of the plan. While the clearance letter involved the parties to the termite protection plan and involved termites, it is not related to or otherwise connected with any provision of the plan. The arbitration clause, by its express terms, is limited in application to controversies related to some provision of the termite protection plan. Therefore, the intent of the parties, as evidenced by the plain language of the arbitration provision, did not include submitting to arbitration claims based upon a clearance letter.
Because no material facts were in dispute, the circuit court would have been justified in concluding that there were no triable issues, and in holding as a matter of law that the Dobsons and the Gwins were not in default for refusing to perform under the arbitration agreement because that agreement did not apply to claims based upon a clearance letter. Thus, the circuit court did not err in denying Terminix's motion for a stay pending arbitration and for an order compelling arbitration as to counts one, two, and three of the Dobsons' amended complaint. Litigation of non-arbitrable claims is not ordinarily due to be stayed pending arbitration of arbitrable claims. Terminix Int'l Co. Ltd. Partnership v. Jackson,669 So.2d 893 (Ala. 1995).
On the other hand, it is obvious that the breach of contract claim alleged in count four of the Dobsons' complaint is inherently related to the interpretation, the performance, or the breach of provisions contained in the termite protection plan. The claims alleged in both counts of the Gwins' cross-claim are also inherently related to the interpretation, the performance, or the breach of provisions contained in the termite protection plan. Therefore, in light of the United States Supreme Court's holding in Allied-Bruce Terminix Cos.,supra, those claims must be submitted to arbitration pursuant to the contract between Terminix and the other parties.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
SHORES, KENNEDY, INGRAM, and BUTTS, JJ., concur.
HOUSTON, J., concurs in the result, without opinion.
MADDOX, J., concurs in the result only, with opinion.
[1] "Orders [denying motions] to stay proceedings pending arbitration and orders [denying motions] to compel arbitration are appealable. " See 9 U.S.C. § 16(a)(1)(A) and (B), part of the Federal Arbitration Act, and A.G. Edwards Sons, Inc. v. Clark, 558 So.2d 358, 360-61
(Ala. 1990). Continental Grain Co. v. Beasley, 628 So.2d 319, 322
n. 3 (Ala. 1993); Old Republic Ins. Co. v. Lanier,644 So.2d 1258, 1259 n. 5 (Ala. 1994). Before the adoption of § 16 and after Ex parte Alabama Oxygen Co., 452 So.2d 860 (Ala. 1984), this Court reviewed orders denying or granting such motions by way of petition for a writ of mandamus. A.G. Edwards Sons,Inc. v. Clark, 558 So.2d 358, 360 (Ala. 1990). Thus, review of a denial of a motion to stay proceedings pending arbitration or to compel arbitration may be obtained by appeal, and review of a grant of such a motion may be obtained by petition for writ of mandamus.
[2] Of course, references in §§ 3 and 4 to federal jurisdiction and procedures must be analogized to corresponding laws and rules of this State.
[3] This premise is entirely consistent with the United States Supreme Court's statement of the law. See Volt Info. Sciences,489 U.S. at 478, 109 S.Ct. at 1255 (stating "we have recognized that the FAA does not require parties to arbitrate when they have not agreed to do so, . . . nor does it prevent parties who do agree to arbitrate from excluding certain claims from the scope of their arbitration agreement"); cf. Mitsubishi Motors,473 U.S. at 627, 105 S.Ct. at 3354 ("Of course, courts should remain attuned to well-supported claims that the agreement to arbitrate resulted from the sort of fraud or overwhelming economic power that would provide grounds 'for the revocation of any contract.' 9 U.S.C. § 2.").
[4] Indeed, such a holding is virtually mandated by the United States Supreme Court's answer to the potential equal protection problem in Prima Paint. Whether a party has a right to demand a jury trial cannot constitutionally turn on a race to the court house. U.S. Const. amend. VII; Ala. Const. 1901 art. I, § 11. We realize that the problem may be academic, because most cases will include demands for arbitration as contemplated in § 4, and the party alleged to be in default may demand a jury trial. Nonetheless, in the absence of a holding that a jury trial is available on a motion for a stay as contemplated in § 3, it would be possible that a party, against whom potentially arbitrable claims are asserted in an action in court, could move for and receive a stay without moving for an order compelling arbitration, thus precluding the other party from being able to demand a jury trial, and the first party would be free to neither litigate nor arbitrate. See Moses H. ConeMemorial Hosp., 460 U.S. at 27, 103 S.Ct. at 942-43.
[5] In fact, Terminix and the Dobsons have filed briefs in this Court presenting arguments on questions presented on remand from the United States Supreme Court. For example, the Dobsons argue that, even though the Federal Arbitration Act applies to the termite protection plan, Terminix has waived its right to proceed under the arbitration clause and that the arbitration clause does not extend to the tort claims brought against Terminix.
[6] This authority follows, at least in part, from the principle that the court may determine whether there are triable issues concerning the making and performance of an agreement to arbitrate and to adjudicate such issues if no jury trial is demanded.
[7] After the release of the Supreme Court's decision, the Dobsons filed in this Court a document entitled "Application for Rehearing," with a brief in support thereof, to which Terminix filed a responsive brief and supplemental brief. In other cases remanded from the United States Supreme Court, this Court has requested additional briefs from the parties. See, e.g., AetnaLife Ins. Co. v. Lavoie, 505 So.2d 1050 (Ala. 1987). The filings of the parties here are functionally equivalent to a rebriefing, and we will treat them as such. We therefore simply treat the "Application for Rehearing" as a brief in response to the United States Supreme Court's order of remand, and consider that the case has been submitted on the order of remand and the briefs.
[8] The arbitration clause in the service order actually signed by Mrs. Gwin is more limited and applies to "any controversy or claim . . . relating to the interpretation, performance or breach of any provision of this contract which relates to newtermite damage." However, we will assume that the broader arbitration clause contained in the official termite protection plan subsequently mailed to the Gwins controls, because the parties have argued the case as if that provision controls.
[9] The standard described in Ex parte Warrior Basin Gas for the interpretation of an agreement to arbitrate is also the standard for the interpretation of contracts in general. SeeLoerch v. National Bank of Commerce, 624 So.2d 552 (Ala. 1993).
[10] The plan does contain a provision concerning "transfer of ownership of the identified property." That provision addresses the applicable contract transfer fee, Terminix's right to revise the annual extension charge, and the automatic termination of the plan if the new owner fails to request continued coverage, but it does not address any rights or responsibilities of the parties concerning the issuance of a clearance letter pursuant to a sale of the property. Clearly, the Gwins could not have pointed to this provision as establishing a right to receive a clearance letter for the house or to receive such a letter free of charge. *Page 112