826 So.2d 819 (2002)
Ex parte Teresa L. KAMPIS.
(Re Teresa L. Kampis v. Thomas L. Yarbrough et al.)
1000099.
Supreme Court of Alabama.
February 8, 2002.
*820 John W. Dodson and Champ Lyons III of Ferguson, Frost & Dodson, L.L.P., Birmingham, for petitioners.
Walter J. Price III and Lane Hines Woodke of Huie, Fernambucq & Stewart, L.L.P., Birmingham, for respondents.

On Application for Rehearing
JOHNSTONE, Justice.
The opinion of September 21, 2001, is withdrawn and the following is substituted therefor.
The plaintiff, Teresa L. Kampis, petitions this Court for a writ of mandamus directing the Shelby County Circuit Court to vacate its order compelling Kampis to arbitrate her claims against the defendants, Thomas L. Yarbrough and T.L. Yarbrough Construction Company, Inc. (collectively called "Yarbrough"). We grant the petition on the ground that Yarbrough has failed to establish the interstate commerce criterion for the application of the Federal Arbitration Act ("FAA"). Rogers Found. Repair, Inc. v. Powell, 748 So.2d 869 (Ala.1999).
On August 20, 1998, Kampis, an Alabama resident, contracted with Yarbrough, an Alabama corporation, to construct a new house at 3024 Brook Highland Drive in Shelby County, Alabama, for $279,900. The purchase contract contains an arbitration agreement that does not address the issue of whether the contract or transaction substantially affected interstate commerce.
After closing on the house, Kampis discovered latent defects causing sloping floors in the house. While Yarbrough attempted to repair the house, Kampis contends that Yarbrough improperly performed the repairs and caused even more damage to the house. On December 15, 1999, Kampis sued the defendants for negligent or wanton construction or design; breach of contract; breach of implied warranty of fitness, workmanship, and habitability; breach of express warranty; fraudulent misrepresentation; and fraudulent suppression.
The defendants moved to compel arbitration of the plaintiff's claims on the basis of the arbitration provision in the purchase contract signed by the parties. In a brief supporting their motion, the defendants argued that the purchase contract substantially affected interstate commerce:
"Here, Defendants and Plaintiff are Alabama residents, but the building materials and suppliers used affected interstate commerce. Yarbrough Construction used national suppliers in the construction of this home, including, but not limited to:
"1. Wickes Lumber; principle [sic] place of business Illinois (See Exhibit 6).
"2. Sherwin Williams; principle [sic] place of business Ohio (See Exhibit 7).
"3. Vulcan Interior Products; principle [sic] place of business Alabama, but division headquarters in California, North Carolina, Tennessee, Illinois, Georgia, and Texas (See Exhibit 5).
"4. Alabama Brick, a Boral Brick Supplier; Boral Brick's principle [sic] place of business is Sydney, Australia (See Exhibit 2).
"5. ALFA Insurance; principle [sic] place of business Alabama, but headquarters in Mississippi and Georgia (See Exhibit 4).
"6. NationsRent, Inc. [Reliable Rentals & Supply Co., Inc.]; principle [sic] place of business Florida (See Exhibit 1).
"The sum spent with these suppliers equals $35,461.30 (See Exhibit 9). The *821 substantial amount of money spent with these national suppliers alone affects interstate commerce. (See Exhibit 6)."
(Exhibit F to the petition for mandamus.) In support of their motion, the defendants submitted copies of Internet articles on each of the companies named in paragraphs 1 through 6 quoted above. The Internet articles describe the business conducted by each company and the revenue generated by each national supply company. In addition to the Internet articles, the defendants submitted an affidavit from the president of T.L. Yarbrough Construction Co., Tom Yarbrough, stating:
"On August 20, 1998, T.L. Yarbrough Construction Company, Inc. entered into a contract with Teresa L. Kampis for the sale of a home located on 3042 Brook Highland Drive and referred to as Lot 1415 in the Brook Highland Development. During the construction of Ms. Kampis's home on Lot 1415, I made the following purchases:
"I purchased lumber from Wickes Lumber, check number 5491 in the amount of $18,000.58 and check number 5591 in the amount of $7,012.11.
"I purchased paint and supplies from Sherwin Williams, check number 5538 in the amount of $94.55.
"I purchased Sheetrock from Vulcan Interior Products, check number 5555 in the amount of $2424.94
"I purchased Boral Brick from Alabama Brick, check number 5530 in the amount of $6748.67; order number 99660 in the amount of $23.15; order number 99034 in the amount of $562.37.
"I purchased builder's risk insurance from ALFA Insurance, check number 5453 in the amount of $514.09.
"I rented a pressure washer from NationsRent, Inc. [Reliable Rentals & Supply Company, Inc.], statement date 2/28/99 in the amount of $81.00.
"In addition, Ms. Kampis arranged for financing with SouthTrust Bank."
Yarbrough does not state that he purchased any of the materials or equipment outside the State of Alabama. He also does not state that Kampis obtained financing outside the State of Alabama.
"A motion to compel arbitration is analogous to a motion for a summary judgment. Allied-Bruce Terminix Cos. v. Dobson, 684 So.2d 102 (Ala.1995); Allstar Homes, Inc. v. Waters, 711 So.2d 924 (Ala.1997). The party seeking to compel arbitration has the burden of proving the existence of a contract calling for arbitration and proving that that contract evidences a transaction affecting interstate commerce. Jim Burke Automotive, Inc. v. Beavers, 674 So.2d 1260 (Ala.1995)."
TranSouth Fin. Corp. v. Bell, 739 So.2d 1110, 1114 (Ala.1999). (Emphasis added.) "To satisfy the interstate-commerce criterion [for application of the FAA] the involvement of, or effect on, interstate commerce must be substantial." Rogers, 748 So.2d at 871. (Emphasis in original.) "[A]fter a motion to compel has been made and supported, the burden is on the nonmovant to present evidence that the supposed arbitration agreement is not valid or does not apply to the dispute in question." Jim Burke Automotive, Inc., 674 So.2d at 1265 n. 1 (emphasis omitted). "If the party moving to compel arbitration fails to make ... a showing [of the existence of a contract containing an arbitration clause in a transaction that substantially affects interstate commerce], the burden of proof does not shift to the opposing party and the motion should be denied." Ex parte Greenstreet, Inc., 806 So.2d 1203, 1208 (Ala.2001). Evidence that a party purchases materials or equipment for construction in Alabama from a company in Alabama which does business with or receives *822 supplies or equipment from a company outside Alabama does not alone establish that the construction in Alabama substantially affects interstates commerce. Sisters of the Visitation v. Cochran Plastering Co., 775 So.2d 759 (Ala.2000).
The defendants have not proven that their contract with Kampis involved a transaction that substantially affected interstate commerce. None of the evidence submitted by the defendants establishes that the materials used to build the Kampis house were shipped from out-of-state. At most, the defendants' evidence establishes that the defendants purchased materials and equipment from various stores located in Alabama and owned or operated by suppliers and distributors which also do business in other states and do interstate business, although not necessarily in the materials or equipment used for Kampis's house. For aught that appears from the defendants' evidence, the materials and equipment used in the construction of the Kampis house originated solely in Alabama and never traveled outside Alabama. Although the stores in Alabama which supplied the defendants with materials and equipment to construct Kampis's house may receive materials and equipment from sources outside Alabama, the evidence does not prove that such materials and equipment were acquired for the construction of Kampis's house or were used in the construction of the house. Thus, the defendants have failed to make a prima facie showing that the construction of Kampis's house substantially involved or affected interstate commerce.
The defendants' theory that the contract or transaction affected interstate commerce is defective for a second and distinct reasonthe come-to-rest doctrine. Any materials or equipment which had moved in interstate commerce to reach the stores in Alabama patronized by Yarbrough had come to rest in those stores and "the flow in interstate commerce had ceased," A.L.A. Schechter Poultry Corp. v. United States, 295 U.S. 495, 543, 55 S.Ct. 837, 79 L.Ed. 1570 (1935), before Yarbrough bought any materials or rented any equipment there. In Schechter Poultry Corp., the United States Supreme Court decided that certain slaughterhouses in Brooklyn, New York, had not engaged in transactions "in or affecting interstate or foreign commerce," 295 U.S. at 542, 55 S.Ct. 837, by purchasing poultry from suppliers in New York City, New York, which had received the poultry from distributors outside New York state. The Court reasoned:
"When defendants had made their purchases, whether at the West Washington Market in New York City or at the railroad terminals serving the City, or elsewhere, the poultry was trucked to their slaughterhouses in Brooklyn for local disposition. The interstate transactions in relation to that poultry then ended. Defendants held the poultry at their slaughterhouse markets for slaughter and local sale to retail dealers and butchers who in turn sold directly to consumers. Neither the slaughtering nor the sales by defendant were transactions in interstate commerce.
"The undisputed facts thus afford no warrant for the argument that the poultry handled by defendants at their slaughterhouse markets was in a `current' or `flow' of interstate commerce, and was thus subject to congressional regulation. The mere fact that there may be a constant flow of commodities into a State does not mean that the flow continues after the property has arrived and has become commingled with the mass of property within the State and is there held solely for local disposition and use. So far as the poultry here in question is concerned, the flow in interstate commerce had ceased. The poultry *823 had come to a permanent rest within the State. It was not held, used, or sold by defendants in relation to any further transactions in interstate commerce and was not destined for transportation to other States. ...
". . . .
"In determining how far the federal government may go in controlling intrastate transactions upon the ground that they `affect' interstate commerce, there is a necessary and well-established distinction between direct and indirect effects.... [W]here the effect of intrastate transactions upon interstate commerce is merely indirect, such transactions remain within the domain of state power. If the commerce clause were construed to reach all enterprises and transactions which could be said to have an indirect effect upon interstate commerce, the federal authority would embrace practically all the activities of the people, and the authority of the State over its domestic concerns would exist only by sufferance of the federal government....
"The distinction between direct and indirect effects has been clearly recognized in the application of the Anti-Trust Act. Where a combination or conspiracy is formed, with the intent to restrain interstate commerce or to monopolize any part of it, the violation of the statute is clear. But where that intent is absent, and the objectives are limited to intrastate activities, the fact that there may be an indirect effect upon interstate commerce does not subject the parties to the federal statute, notwithstanding its broad provisions.

. . .
"... [T]he distinction between direct and indirect effects of intrastate transactions upon interstate commerce must be recognized as a fundamental one, essential to the maintenance of our constitutional system. Otherwise, as we have said, there would be virtually no limit to the federal power, and for all practical purposes we should have a completely centralized government.
". . . .
"It is not the province of the Court to consider the economic advantages or disadvantages of such a centralized system. It is sufficient to say that the Federal Constitution does not provide for it. Our growth and development have called for wide use of the commerce power of the federal government in its control over the expanded activities of interstate commerce, and in protecting that commerce from burdens, interferences, and conspiracies to restrain and monopolize it. But the authority of the federal government may not be pushed to such an extreme as to destroy the distinction, which the commerce clause itself establishes, between commerce `among the several States' and the internal concerns of a State."
Schechter Poultry Corp., 295 U.S. at 542-50, 55 S.Ct. 837 (Citations omitted; emphasis in original omitted; and emphasis added.) If any materials or equipment used for the Kampis house originated outside Alabama (as Yarbrough has not established), nonetheless those materials and equipment had "become commingled with the mass of property within the State [in the inventory of the stores in Alabama] and ... [had been] there held solely for local disposition and use.... [T]he flow in interstate commerce had ceased. The [materials and equipment] had come to a permanent rest within the State. [They were] not held, used, or sold by defendants in relation to any further transactions in interstate commerce and [were] not destined for transportation to other States." Schechter Poultry Corp., 295 U.S. at 543, 55 S.Ct. 837 (emphasis added). Therefore, the tendencies of Yarbrough's own evidence *824 disprove the theory that the Kampis contract or transaction affected interstate commerce sufficiently to support the application of the FAA.
Because the defendants have failed to establish that their contract or transaction with the plaintiff substantially affected interstate commerce and thereby warranted the application of the FAA, Alabama law controls. Rogers Found. Repair, supra. Section 8-1-41(3), Ala.Code 1975, prohibits specific performance of pre-dispute agreements to arbitrate. Therefore, the trial court erred in compelling the plaintiff to arbitrate her claims against the defendants.
The plaintiff has shown a clear legal right to the relief requested. Accordingly, we grant the petition and issue a writ directing the trial court to vacate its order compelling the plaintiff to arbitrate her claims and to enter an order denying the defendants' motion to compel arbitration.
APPLICATION OVERRULED; OPINION OF SEPTEMBER 21, 2001, WITHDRAWN; OPINION SUBSTITUTED; WRIT GRANTED.
MOORE, C.J., and HARWOOD and STUART, JJ., concur.
HOUSTON and WOODALL, JJ., concur in the rationale in part and concur in the result.
BROWN, J., concurs in the result.
SEE, J., dissents.
LYONS, J., recuses himself.
WOODALL, Justice (concurring in the rationale in part and concurring in the result).
I concur in the result. I also concur in the lead opinion to the extent that it holds that the defendants have failed to make a prima facie showing that the construction of Kampis's house substantially affected interstate commerce. However, I do not find it necessary to address the come-to-rest doctrine, which has not been raised by the petitioner. Therefore, I do not concur in the discussion in the lead opinion of the come-to-rest doctrine.
HOUSTON, J., concurs.
SEE, Justice (dissenting).
The main opinion grants Kampis's petition for a writ of mandamus and directs the trial court to vacate its order compelling arbitration, because, the main opinion concludes, the parties' contract does not have a sufficient nexus with interstate commerce to subject this dispute to the provisions of the Federal Arbitration Act (the "FAA"), 9 U.S.C. § 1 et seq. I disagree, and I respectfully dissent for the same reasons that I dissented in Sisters of the Visitation v. Cochran Plastering Co., 775 So.2d 759 (Ala.2000), on which the main opinion relies.
In Sisters of the Visitation, this Court established a standard for determining when a transaction has a "substantial effect" on interstate commerce. I believe the standard this Court established in Sisters of the Visitation is inconsistent with prior decisions of the United States Supreme Court. As I wrote in my dissenting opinion in that case, "The United States Supreme Court has held that in the FAA Congress exercised the full scope of its Commerce Clause power." 775 So.2d at 782 (See, J., dissenting) (citing Allied-Bruce Terminix Cos. v. Dobson, 513 U.S. 265, 277, 115 S.Ct. 834, 130 L.Ed.2d 753, (1995)). Further, I noted that, "[u]ntil the United States Supreme Court overrules Wickard [v. Filburn, 317 U.S. 111, 63 S.Ct. 82, 87 L.Ed. 122 (1942) ], Congress may constitutionally subject to federal jurisdiction economic activity that affects interstate commerce, as long as that effect is substantial when considered in the aggregate." *825 Sisters of the Visitation, 775 So.2d at 782 (See, J., dissenting).
The evidence in this case established that the defendants purchased substantial quantities of building materials from retailers and suppliers operating throughout Alabama and across state lines. The aggregate effect of those transactions, when considered under Wickard v. Filburn, 317 U.S. 111, 63 S.Ct. 82, 87 L.Ed. 122 (1942), creates a nexus with interstate commerce that is sufficient to support Congress's authority to enact the FAA and to subject this contract to its application. Given the parties' clear agreement to settle their disputes through arbitration, the trial court properly granted Yarbrough's motion to compel arbitration. Accordingly, I must respectfully dissent.