On Application for Rehearing
The opinion of June 28, 2002, is withdrawn and the following opinion is substituted therefor.
William T. Chesser ("Chesser") appeals from the trial court's order compelling him to arbitrate his claims against AmSouth Bank, N.A. ("AmSouth"). We affirm.
 Facts and Procedural History
On May 4, 1998, Chesser purchased a used 1995 GMC truck from Premiere Chevrolet, Inc., in Bessemer. AmSouth financed the purchase of the truck. After negotiating the terms of his purchase with a salesperson, Chesser met with Chris Ferguson, the business manager at Premiere Chevrolet, to finalize the necessary paperwork and to complete the sale. At *Page 1084 
that time, Chesser executed a buyer's order, an installment sales contract and security agreement, and an application for credit-disability and credit-life insurance coverage from Protective Life Insurance Corporation of Alabama ("Protective Life").
The buyer's order provided:
 "Purchaser acknowledges the vehicle has been traveling in interstate commerce and had an impact on interstate commerce. In the event any dispute(s) under the terms of this contract or sale arise, (including, but not limited to, the terms of agreement, the condition of the motor vehicle sold, the conformity of the motor vehicle sold to the contract, the representations, promises, undertakings or covenants made by Premiere Chevrolet, Inc. in connection with the sale of the motor vehicle, or otherwise dealing with the motor vehicle, any terms of financing in connection therewith, or any terms of any credit life and/or disability insurance purchased simultaneously herewith, or extended service or maintenance agreements(s), Premiere Chevrolet, Inc. and the purchaser(s) agree to submit such dispute(s) to binding arbitration, pursuant to the provisions of 9 U.S.C. § 1, Et Seq., and according to the commercial rules of the American Arbitration Association then existing, in Bessemer, Alabama."
Similarly, the retail installment contract contained the following provision:
 "[A]ny controversy, claim, dispute, or disagreement arising out of, in connection with, or relating to (1) the interpretation, negotiation, execution, collateralization, administration, repayment, modification, or extension of this Agreement or any assignment thereof; (2) any charge or cost incurred pursuant to this Agreement; (3) the collection of any amounts due under this Agreement or any assignment thereof; (4) an alleged tort relating in any way to this Agreement, collateral under this Agreement or any insurance or mechanical repair contract purchased pursuant to this Agreement; or (5) any breach of any provision of this Agreement, shall be settled by arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association. . . ."
Finally, the certificate of insurance Chesser received when he applied for the credit-life and credit-disability insurance coverage provided:
 "The issuance of this coverage takes place in and substantially affects interstate commerce. Any dispute, controversy, or cause of action by the Policyholder, you or your beneficiary, or their respective assigns (each referred to in this Arbitration section as `claimant') arising out of or relating in any way to, this insurance, or to the sale or solicitation of this insurance, shall be settled by arbitration under the provisions of the Federal Arbitration Act, 9 U.S.C. § 1, et seq. Such arbitration shall be governed by the rules of the American Arbitration Association. . . ."
Approximately seven months after he purchased the truck, Chesser underwent heart surgery and was unable to continue making the installment payments due on the AmSouth loan. Chesser contacted Premiere Chevrolet and told them that he wished to make a claim for benefits under the credit-disability policy he had purchased from Protective Life when he purchased the truck. Pursuant to Chesser's request, Premiere Chevrolet forwarded Chesser's claim to Protective Life. Protective Life subsequently denied Chesser's claim and refunded to AmSouth, as the lienholder on the vehicle, the $1,141.38 premium. AmSouth subsequently repossessed the truck on April 29, 1999, after Chesser failed to make several payments. *Page 1085 
Chesser maintains that although AmSouth received the refunded premium before it repossessed the truck, AmSouth failed to apply the refunded premium to the arrearage he owed on the loan. After it repossessed the truck, AmSouth hired RMS Remarketing Services to prepare the truck for sale at an automobile auction in Moody, Alabama.
On March 22, 2000, Chesser sued AmSouth, Protective Life, and Ferguson, alleging breach of contract, fraud, negligent failure to obtain insurance, wrongful possession and conversion, and bad-faith refusal to pay an insurance claim.[1] AmSouth responded by asserting that it was entitled to arbitrate Chesser's claims, and it moved to stay the action pending arbitration or, alternatively, to dismiss the action. Ferguson also moved to dismiss the action and to compel arbitration. Protective Life answered the complaint, denying all allegations. After the parties had briefed and argued the motions to compel arbitration, the trial court granted the motions. Although Protective Life's attorneys had previously notified Chesser that it would not seek to enforce the arbitration provision contained in the certificate of insurance, it moved for a joint and consistent disposition after being served with the other parties' motions to compel arbitration. Accordingly, the trial court's order stated:
 "Motion to compel arbitration by AmSouth Bank and joined in by the other defendants is granted. This case is stayed and is ordered to arbitration. The case is dismissed due to the arbitration. Costs taxed as paid."
This appeal followed.
 Analysis
"`[T]he standard of review of a trial court's ruling on a motion to compel arbitration at the instance of either party is a de novo
determination of whether the trial judge erred on a factual or legal issue to the substantial prejudice of the party seeking review.'" Vannv. First Cmty. Credit Corp., [Ms. 1010113, March 8, 2002] 834 So.2d 751,752 (Ala. 2002) (quoting Ex parte Roberson, 749 So.2d 441, 446 (Ala. 1999)).
A section of the Federal Arbitration Act ("the FAA"), 9 U.S.C. § 2, provides:
 "A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."
"To satisfy the interstate-commerce criterion, the involvement of, or effect on, interstate commerce must be substantial." Rogers Found.Repair, Inc. v. Powell, 748 So.2d 869, 871 (Ala. 1999) (citing SouthernUnited Fire Ins. Co. v. Knight, 736 So.2d 582, 585 (Ala. 1999)). Because AmSouth sought to compel arbitration of Chesser's claims, it had the burden of proving that the contract called for arbitration and that the contract evidenced a transaction that substantially affected interstate commerce. See Southern United Fire Ins. Co. v. Knight, 736 So.2d at 586.
AmSouth maintains that it met its burden of proving that the transaction had a substantial effect on interstate commerce because the retail installment agreement signed by Chesser indicated that he wished to purchase credit-disability and credit-life insurance, that he wished to purchase an extended service contract, and that he promised to maintain comprehensive and collision automobile insurance. We agree. The purchase of credit-life and credit-disability insurance was effectuated *Page 1086 
by Premier Chevrolet's forwarding a check to Protective Life in California. Similarly, the purchase of the extended service contract was effectuated by Premier Chevrolet's forwarding a check to "MS Dealer Service Corporation," which is headquartered in Florida. Finally, Chesser obtained insurance providing comprehensive and collision coverage from State Farm Insurance Company, which is headquartered in Illinois.
Chesser's commitments to purchase the credit-life and credit-disability insurance, the extended service contract, and the comprehensive and collision insurance were made concurrently with his purchase of the vehicle. In fact, a portion of the loan proceeds was used to pay the premium on the credit-disability and credit-life insurance and to pay the cost of the extended service contract. "We cannot employ an unrealistically narrow construction of the `transaction' concept so as to limit our scrutiny to the event transpiring at the time of the sale."Green Tree Fin. Corp. v. Lewis, 813 So.2d 820, 824 (Ala. 2001). Considering the aggregate effects the transaction has on interstate commerce, we hold that this transaction substantially affected interstate commerce so as to invoke application of the FAA. Accordingly, we affirm the trial court's order compelling Chesser to arbitrate his claims against AmSouth.
APPLICATION GRANTED; OPINION OF JUNE 28, 2002, WITHDRAWN; OPINION SUBSTITUTED; AFFIRMED.
Houston, See, Lyons, Harwood, Woodall, and Stuart, JJ., concur.
Moore, C.J., dissents.
[1] Protective Life and Ferguson are not parties to the appeal.