854 So.2d 1129 (2003)
PARKWAY DODGE, INC.
v.
Ernest HAWKINS.
1010898.
Supreme Court of Alabama.
February 7, 2003.
*1130 John Martin Galese and Jeffrey L. Ingram of Galese & Ingram, P.C., Birmingham, for appellant.
Jay Thompson, Birmingham, for appellee.
BROWN, Justice.
Parkway Dodge, Inc., a defendant in an action pending in the Jefferson Circuit Court appeals from an order denying its motion to compel arbitration of the claims filed against it by Ernest Hawkins. We reverse and remand.

Facts and Procedural History
In September 1997, Hawkins purchased a used 1996 Chrysler Sebring automobile from Parkway Dodge in Birmingham. Hawkins financed the purchase of the car through America's First Federal Credit Union, a company organized and headquartered in Alabama. Hawkins alleges that, in an effort to entice him to buy the car, Gerry Grant, a salesman for Parkway Dodge, told Hawkins that the car was a "fine automobile"; that it had been previously owned by the daughter of the owner of Parkway Dodge; and that if he purchased it he "wouldn't go wrong." In addition, Hawkins alleges that Parkway Dodge's accountant, Mike Copeland, also assured Hawkins that the car was a "really good car" and that it had been previously owned by the owner's daughter.
In conjunction with the purchase of the vehicle, Hawkins executed a retail buyer's order. The retail buyer's order contained an arbitration agreement; that agreement provided:
"Alternative dispute resolution agreement by binding arbitration: The Dealer and Purchaser(s) mutually covenant, stipulate and agree, in connection with the resolution of any dispute arising out of the contract(s) entered into by the parties of and concerning the within described *1131 motor vehicle as follows: That the vehicle described within was manufactured outside of Alabama; has operated and will continue to operate on interstate highways; has been traveling in interstate commerce; the manufacture, transportation, sale and use thereof has been and will continue to be regulated by laws of the United States of America; and, that the contract(s) entered into by the parties concerning said motor vehicle evidence [a] transaction involving and affecting commerce. The undersigned agree that all disputes not barred by applicable statutes of limitations or otherwise barred by law, resulting from or arising out of the sale transaction entered into, (including but not limited to: the terms of this agreement and all clauses herein contained, their breadth and scope, and any term of any agreement contemporaneously entered into by the parties concerning any goods or services acquired by the purchaser(s); the condition of the motor vehicle; the conformity of the motor vehicle sold to the contract of sale; the representations, promises, undertakings, warranties or covenants made by Dealer in connection with the sale of the motor vehicle, or otherwise dealing with the motor vehicle; the terms of financing in connection therewith; any terms or provisions of any credit life and/or disability insurance purchased simultaneously herewith; or any terms or provisions of any extended service contract purchased simultaneously herewith); that Dealer and the purchaser(s) agree to submit such dispute(s) to BINDING ARBITRATION, pursuant to provisions of 9 U.S.C. Section 1, et. seq. and according to the Commercial Rules of the American Arbitration Association then existing.... THIS ARBITRATION AGREEMENT SHALL BE IN LIEU OF ANY CIVIL LITIGATION IN ANY COURT, AND IN LIEU OF ANY TRIAL BY JURY."
(Capitalization in original.)
In addition, as part of the sale transaction, Hawkins purchased a service contract from Chrysler Corporation, a foreign corporation,[1] and a credit-life insurance policy provided by Resource Life, an Illinois corporation, the premium for which was also financed as part of the purchase of the automobile.
Hawkins alleges that after the purchase he experienced continued mechanical problems with the car and upon investigation he discovered that the previous owner of the car was Dollar Systems, Inc., a car rental agency. On October 12, 2001, Hawkins sued Parkway Dodge and Gerry Grant in the Jefferson Circuit Court, alleging suppression and misrepresentation.[2] On November 27, 2001, Parkway Dodge answered the complaint and filed a motion to compel Hawkins to submit the dispute to binding arbitration. Along with the motion, Parkway Dodge attached the affidavit of Rick Holt, the president of Parkway Dodge. Holt stated, in pertinent part:
"As a part of the purchase of the vehicle, Hawkins purchased a service contract from Chrysler, a corporation foreign to Alabama. That service contract obligated Chrysler to provide specific services to Hawkins at any Chrysler dealership throughout the United States.
"As a part of the purchase of the vehicle, Hawkins also purchased a credit life insurance policy. That policy was a *1132 part of the sales transaction and was financed as part of the purchase. The company wh[ich] provided [the policy was] [R]esource Life[,] an Illinois corporation headquartered in Illinois.
"As a part of the arbitration agreement, Hawkins agreed to abide by the Commercial Rules of the American Arbitration Association."
On December 14, 2001, Hawkins filed a response to Parkway Dodge's motion to compel arbitration, but he did not offer any evidentiary submissions. On December 19, 2001, the trial court entered an order denying the motion to compel arbitration, finding that the "evidence d[id] not establish that the sale of the vehicle in Alabama substantially affected interstate commerce." Parkway Dodge appeals.
Standard of Review
"Our analysis in this case is guided by the following standard of review:
"`This Court reviews de novo the [grant or] denial of a motion to compel arbitration. Parkway Dodge, Inc. v. Yarbrough, 779 So.2d 1205 (Ala.2000). A motion to compel arbitration is analogous to a motion for a summary judgment. TranSouth Fin. Corp. v. Bell, 739 So.2d 1110, 1114 (Ala.1999). The party seeking to compel arbitration has the burden of proving the existence of a contract calling for arbitration and proving that [the] contract evidences a transaction affecting interstate commerce. Id. "[A]fter a motion to compel arbitration has been made and supported, the burden is on the non-movant to present evidence that the supposed arbitration agreement is not valid or does not apply to the dispute in question." Jim Burke Automotive, Inc. v. Beavers, 674 So.2d 1260, 1265 n. 1 (Ala.1995) (opinion on application for rehearing).'
"Fleetwood Enters., Inc. v. Bruno, 784 So.2d 277, 280 (Ala.2000) (emphasis omitted)."
Lewis v. Conseco Fin. Corp., 848 So.2d 920, 922 (Ala.2002).

Analysis
Parkway Dodge contends that the transaction at issue sufficiently involved interstate commerce so as to invoke the provisions of the Federal Arbitration Act, 9 U.S.C. § 1 et seq. ("the FAA"). Specifically, Parkway Dodge maintains that it met its burden of proving that the transaction had a substantial effect on interstate commerce by submitting the affidavit of Rick Holt, the president of Parkway Dodge. Holt states in the affidavit that as part of the transaction, Hawkins purchased a service contract from Chrysler, a foreign corporation. In addition, Hawkins purchased a credit-life insurance policy from Resource Life, a corporation headquartered in Illinois, and the purchase of that policy was financed as part of that purchase of the car.
The FAA provides:
"A written provision in ... a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."
9 U.S.C. § 2. "The federal policy favoring arbitration is so strong that, as a matter of law, `any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration....'" Ameriquest Mortgage Co. v. Bentley, 851 So.2d 458, 463 (Ala.2002) (quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25, 103 S.Ct. 927, 74 L.Ed.2d 765 *1133 (1983)). However, "`[t]o satisfy the interstate-commerce criterion, the involvement of, or effect on, interstate commerce must be substantial.'" Chesser v. AmSouth Bank, N.A., 846 So.2d 1082, 1085 (Ala. 2002) (quoting Rogers Found. Repair, Inc. v. Powell, 748 So.2d 869, 871 (Ala.1999)).
The facts of this case are identical to those in Chesser v. Amsouth Bank, supra. In that case, Chesser, an Alabama resident, purchased a used truck from an in-state automobile dealer and obtained financing for the purchase from AmSouth, an Alabama corporation. Concurrent with his purchase of the vehicle, Chesser also purchased credit-life insurance, an extended service contract, and collision insurance, all purchased from out-of-state companies. Chesser, 846 So.2d at 1086.
Chesser underwent heart surgery and was unable to continue making the installment payments on the loan; his truck was repossessed. Chesser sued AmSouth, Protective Life, and the car dealer, alleging breach of contract, fraud, negligent failure to obtain insurance, wrongful possession and conversion, and bad-faith refusal to pay an insurance claim. AmSouth responded by filing a motion to compel arbitration. The trial court subsequently granted AmSouth's motion, and Chesser appealed. Id.
In upholding the trial court's order compelling arbitration, we found that Chesser's purchase of credit-life insurance, the extended service contract, and collision insurance from out-of-state companies concurrently with his purchase of the vehicle was part of the same "transaction." See Green Tree Fin. Corp. v. Lewis, 813 So.2d 820, 824 (Ala.2001) ("We cannot employ an unrealistically narrow construction of the `transaction' concept so as to limit our scrutiny to the event transpiring at the time of the sale."). Therefore, we held that because Chesser's purchase of credit-life insurance, the service contract, and collision insurance substantially affected interstate commerce, the FAA was applicable. Id.
As in Chesser, Hawkins purchased the service contract and credit-life insurance from out-of-state corporations concurrently with his purchase of the vehicle. In addition, like Chesser, Hawkins financed the purchase of his credit-life insurance as part of the purchase of the vehicle. Based on the above, we hold that the transaction in this case substantially affected interstate commerce so as to invoke the application of the FAA. Accordingly, we reverse the trial court's order denying arbitration and remand this case for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
HOUSTON, SEE, LYONS, HARWOOD, WOODALL, and STUART, JJ., concur.
MOORE, C.J., and JOHNSTONE, J., dissent.
JOHNSTONE, Justice (dissenting).
The Federal Arbitration Act ("FAA") does not apply unless the contract containing the arbitration clause substantially affects interstate commerce. 9 U.S.C. § 2; Alafabco, Inc. v. Citizens Bank, [Ms. 1010703, August 30, 2002] ___ So.2d ___, ___(Ala.2002). The only contract which contains an arbitration clause in this case is the retail buyer's order between an Alabama seller and an Alabama buyer for a car which "`had come to a permanent rest,'" Ex parte Kampis, 826 So.2d 819, 823 (Ala.2002) (quoting A.L.A. Schechter Poultry Corp. v. United States, 295 U.S. 495, 543, 55 S.Ct. 837, 79 L.Ed. 1570 (1935)) (emphasis omitted), in Alabama long before the inception of this transaction. Because these facts are like those in Tefco Finance Co. v. Green, 793 So.2d 755 *1134 (Ala.2001), we should follow Tefco and affirm the denial of the motion to compel arbitration.
The service contract between Hawkins and Chrysler and the credit-life insurance policy between Hawkins and Resource Life are entirely distinct from the contract containing the arbitration clause. Moreover, for aught that appears in the record, Chrysler is a foreign corporation only in the sense that it is incorporated under the laws of a foreign state. In any event, to maintain the fundamentals of constitutional federalism in judging the applicability of the FAA, this Court should decline to recognize interstate features in contracts distinct from the one containing the arbitration clause. See Ex parte Kampis, 826 So.2d at 822-23.
NOTES
[1] The record does not indicate where Chrysler Corporation is headquartered, only that it is a foreign corporation.
[2] Grant apparently was never served; he is not party to this appeal.