[1] Conseco stated in a motion filed in the circuit court that its correct name is "Conseco Finance Corporation."
Ed Lewis, his wife Bertha Lewis, and their son Jimmy Lewis purchased a manufactured home from Blue Ribbon Homes, Inc. However, for the purchasers only Ed and Bertha Lewis executed the "Retail Installment Contract and Agreement" required in connection with the purchase of the manufactured home. A representative of Blue Ribbon also executed the installment contract. Blue Ribbon assigned the installment contract to Green Tree Financial Corporation, now known as Conseco Financial Corporation (hereinafter "Green Tree").
Seven years after the purchase, Jimmy Lewis and Bertha Lewis commenced an action in the Hale Circuit Court against Green Tree, Blue Ribbon, and Thomas Deas, an employee of Blue Ribbon, alleging fraudulent inducement, theft by deception, and breach of fiduciary duties.[2] Relying upon an arbitration provision in the installment contract, Green Tree moved to compel arbitration of the Lewises' claims. The Lewises moved to be allowed to conduct discovery on the question whether the arbitration provision was enforceable; the court granted their motion. Thereafter, the Lewises submitted deposition testimony of a representative of Blue Ribbon, deposition testimony of a representative of Green Tree, and the Commercial Rules of the American Arbitration Association; these were the only materials they offered in opposition to the motion to compel arbitration. In support of its motion to compel arbitration, Green Tree submitted briefs *Page 822 
and the affidavit of one of its representatives. After conducting a hearing, the trial court denied the motion to compel arbitration. Green Tree appeals.
The arbitration provision in the installment contract reads as follows:
 "ARBITRATION: All disputes, claims, or controversies arising from or relating to this Contract or the relationships which result from this Contract, or the validity of this arbitration clause or the entire Contract, shall be resolved by binding arbitration by one arbitrator selected by Assignee with consent of Buyer(s). This arbitration Contract is made pursuant to a transaction in interstate commerce, and shall be governed by the Federal Arbitration Act at 9 U.S.C. § 1. Judgment upon the award rendered may be entered in any court having jurisdiction. The parties agree and understand that they choose arbitration instead of litigation to resolve disputes. The parties understand that they have a right or opportunity to litigate disputes through a court, but that they prefer to resolve their disputes through arbitration, except as provided herein. THE PARTIES VOLUNTARILY AND KNOWINGLY WAIVE ANY RIGHT THEY HAVE TO A JURY TRIAL EITHER PURSUANT TO ARBITRATION UNDER THIS CLAUSE OR PURSUANT TO A COURT ACTION BY ASSIGNEE (AS PROVIDED HEREIN). The parties agree and understand that all disputes arising under case law, statutory law, and all other laws including, but not limited to, all contract, tort, and property disputes will be subject to binding arbitration in accord with this Contract. The parties agree and understand that the arbitrator shall have all powers provided by the law and the Contract. These powers shall include all legal and equitable remedies, including, but not limited to, money damages, declaratory relief, and injunctive relief. Notwithstanding anything hereunto [sic] the contrary, Assignee retains an option to use judicial or non-judicial relief to enforce a security agreement relating to the Manufactured Home secured in a transaction underlying this arbitration agreement, to enforce the monetary obligation secured by the Manufactured Home or to foreclose on the Manufactured Home. Such judicial relief would take the form of a lawsuit. The institution and maintenance of an action for judicial relief in a court to foreclose upon any collateral, to obtain a monetary judgment, or to enforce the security agreement shall not constitute a waiver of the right of any party to compel arbitration regarding any other dispute or remedy subject to arbitration in this Contract, including the filing of a counterclaim in a suit brought by Assignee pursuant to this provision."
Two issues are before the Court on this appeal: 1) whether Green Tree, as the party seeking to compel arbitration, carried its burden of showing that the transaction that was the basis for the contract containing the arbitration provision had the requisite substantial effect on interstate commerce and 2) whether a state-law defense to the enforceability of contracts defeats the arbitration provision in the installment contract.
 I. Interstate Commerce
The arbitration provision states that it is "made pursuant to a transaction in interstate commerce, and shall be governed by the Federal Arbitration Act at 9 U.S.C. § 1." The terms of the installment contract specifically authorized the assignment by Blue Ribbon to Green Tree. Green Tree was identified as the "assignee," and the Lewises expressly agreed that *Page 823 
they would make their payments to Green Tree.
Green Tree established through the affidavit of its representative, Kenneth Holt, that it was a Delaware corporation maintaining its principal place of business in Minnesota and that its purchase of the installment contract was accomplished by remitting payment to Blue Ribbon by a check drawn on a Minnesota banking institution. The Lewises made payments to Green Tree by mail, to an address in Louisville, Kentucky. The manufactured home is described in the contract as a 1994 "Southern Homes" model. The deposition of the representative of Blue Ribbon offered by the Lewises establishes that Southern Energy's manufacturing facility and its home office are located in Alabama. The briefs do not make it clear whether the home made the basis of this action was manufactured by Southern Energy in Alabama.[3]
The Lewises contend that the sale took place entirely in Alabama and was between Alabama consumers and an Alabama dealer and, therefore, they argue that as of the time of the sale nothing had occurred that would trigger the application of the Federal Arbitration Act ("FAA"). Furthermore, the Lewises maintain that those aspects of the transaction relating to the interstate activities of Green Tree, as assignee of the installment contract, are immaterial as they relate to matters between Green Tree and Blue Ribbon. The Lewises ask us to ignore the fact that they made payments to Green Tree at an address in Kentucky — they argue that the mailing of payments is immaterial to the "transaction" at issue, that is, that the transaction consisted of the events transpiring at the point of sale.
Green Tree contends that the sentence in the arbitration provision stating that "[t]his arbitration contract is made pursuant to a transaction in interstate commerce, and shall be governed by the Federal Arbitration Act at 9 U.S.C. § 1," supports its contention that the Lewises' claims should be arbitrated. However, that statement would not support an order applying the FAA absent a showing that the transaction out of which the arbitration agreement arose had the requisite substantial effect on interstate commerce. This is so because, without such a showing, that statement in the arbitration agreement would violate the public policy of Alabama as set forth in § 8-4-41(3), Ala. Code 1975, where the Legislature has declared that arbitration agreements are not subject to specific performance. See Rogers Foundation Repair, Inc.v. Powell, 748 So.2d 869, 872 (Ala. 1999).
Green Tree relies upon Sisters of the Visitation v. Cochran PlasteringCo., 775 So.2d 759 (Ala. 2000), as applied in American General Finance,Inc. v. Branch, 793 So.2d 738 (Ala. 2000), to support its conclusion that "the relationships that existed in this case are sufficient to invoke application of the FAA." In Branch, the plaintiff sued his lender, with which he had entered into a loan agreement containing an arbitration clause. In that context, this Court properly analyzed the relationship between *Page 824 
the plaintiff and the lender and concluded that the transaction between them had had the requisite substantial effect on interstate commerce. Here, the relationship between the Lewises and Green Tree arises entirely as a result of the assignment by Blue Ribbon to Green Tree. However, as previously noted, the assignment of the installment contract to Green Tree was specifically authorized by the terms of the contract and Green Tree was identified as the "assignee." The Lewises expressly agreed that they would make their payments to Green Tree.
We cannot employ an unrealistically narrow construction of the "transaction" concept so as to limit our scrutiny to the events transpiring at the time of the sale. The arbitration provision not only embraces the installment contract itself, but also expressly covers all "relationships which result from this Contract." As a result, the facts supporting the conclusion that the sales transaction in this case had a substantial effect upon interstate commerce, even those facts arising from the assignment by Blue Ribbon to Green Tree, are quite relevant.
After noting the presence of certain facts — such as the fact that the lender's parent corporation was a foreign corporation with headquarters outside Alabama; the fact that the loan proceeds had moved from outside Alabama to Alabama; and the fact that ultimately payments made by customers to the lender in Alabama moved out of the state — this Court concluded in Branch that "the corporate relationships involved here generate precisely the complex interstate commercial activity that we expressly noted was absent in Sisters."793 So.2d at 747. The facts presented in this present case are even more compelling, because Green Tree itself is a foreign corporation with its principal place of business outside Alabama and the payments the Lewises made to Green Tree were made directly to a point outside Alabama. This Court observed in Sisters of the Visitation:
 "In Allied-Bruce Terminix Companies v. Dobson, 513 U.S. 265, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995) (`Terminix'), the United States Supreme Court held that for an arbitration clause to be enforceable under the FAA the transaction to which the contract relates must turn out, in fact, to involve interstate commerce, regardless of the contemplation of the parties. Id. at 278, 115 S.Ct. 834."
775 So.2d at 760 (emphasis added). For this reason, it is inconsequential that the parties, when they entered the sales transaction, did not anticipate the extent to which subsequent events surrounding the expressly contemplated assignment might involve interstate commerce. Likewise, the fact that the installment contract refers to Green Tree and states an address in Montgomery, Alabama, does not support the Lewises' opposition to arbitration.
Green Tree had the burden of establishing that the sales transaction had a substantial effect on interstate commerce. Tefco Fin. Co. v.Green, 793 So.2d 755 (Ala. 2001). On the record before us, we hold that Green Tree has carried its burden.[4]
 II. State-law Contract Defenses
The Lewises argue that the arbitration provision "is subject to state Law contract defenses and is unenforceable under *Page 825 
the facts and law of this case." The closest they come to identifying any specific contract defense appears in this statement in their brief: "The elements of Branch are surely present here." We assume from this cryptic statement that the Lewises contend that the defense of unconscionability applies in this case and makes the arbitration provision unenforceable. This contention fails, for several reasons.
The arbitration provision in Branch limited the kind of damages the plaintiff could recover. No such limitation appears in the arbitration provision now before the Court. The Lewises have made no showing that they lacked a meaningful choice in obtaining financing; the plaintiff inBranch did make such a showing. Nothing in the record details the lending practices of lenders other than Green Tree in 1993, when the Lewises entered into the sales transaction. Nothing in the record suggests that the Lewises attempted to "shop around" for a financing arrangement that would not call for arbitration of disputes.
The Lewises claim to be illiterate.[5] However, their illiteracy would not be a defense to enforcement of the contract. In MitchellNissan, Inc. v. Foster, 775 So.2d 138 (Ala. 2000), this Court acknowledged a long-established rule in Alabama:
 "`[A] person who signs an instrument without reading it, when he can read, [cannot], in the absence of fraud, deceit or misrepresentation, avoid the effect of his signature, because [he is] not informed of its contents; and the same rule [applies] to one who [cannot] read, if he neglects to have it read, or to [inquire] as to its contents.'"
775 So.2d at 140 (quoting Beck Pauli Lithographing Co. v. Houppert,104 Ala. 503, 506, 16 So. 522, 522 (1894) (emphasis added in Foster)).
The Lewises invite a remand for the trial court to make specific findings, citing Cavalier Manufacturing, Inc. v. Jackson, [Ms. 1000391, April 13, 2001] ___ So.2d ___ (Ala. 2001). The remand was warranted inJackson, so that the trial court could make express findings as to the validity of an arbitration provision prohibiting the arbitrator from awarding punitive damages. As previously noted, the arbitration provision in this present case contains no such restriction. Consequently, based upon the facts of this case and the terms of the arbitration provision before us, we see no reason to remand for specific findings.
 III. Conclusion
We reverse the order denying Green Tree's motion to compel arbitration. We remand this case for the trial court to enter an order consistent with this opinion.
REVERSED AND REMANDED.
Houston, See, Brown, Harwood, Woodall, and Stuart, JJ., concur.
Moore, C.J., and Johnstone, J., dissent.
[2] Ed Lewis is now deceased. The manufacturer of the mobile home also is not a party to this action.
[3] This Court has previously held that the sale of a manufactured home made in Alabama and sold by an Alabama dealer to an Alabama resident is a transaction that can substantially affect interstate commerce. SeeSouthern Energy Homes, Inc. v. McCray, 788 So.2d 822
(Ala. 2000). However, in McCray, we had before us substantial facts concerning Southern Energy indicating, among other things, that Southern Energy was a Delaware corporation and that many component parts used in the manufacture of the mobile home had moved in interstate commerce. 788 So.2d at 883 n. 1. No factual details of this nature appear in the record before us in this present case.
[4] The Lewises point to the testimony of Green Tree's representative, Holt, in which he stated, "I don't know if they [these transactions] have or haven't affected interstate commerce." Because of the other evidence before us, we do not deem the testimony regarding Holt's knowledge to be dispositive.
[5] Jimmy Lewis testified that his parents could not read or write and that they did not ask anyone to read the installment contract to them because, he says, they trusted Blue Ribbon. He said that he signed documents in connection with the manufactured home purchase, but, he said, he did not know what those documents were. He testified that he had attended school only through the sixth grade, that he cannot read or write, and that he did not know what he or his parents signed because, he says, he trusted Blue Ribbon.