[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 922 
These consolidated appeals present issues involving arbitration. The trial court granted Conseco Finance Corporation's motion to compel arbitration and denied a similar motion filed by WLS, Inc., Larry Smith, Gail Smith, and Lisa Melendy (hereinafter "the WLS defendants"[1]). For the reasons stated below, we affirm the trial court's judgment with respect to Conseco and reverse the trial court's judgment with respect to the WLS defendants.
 I. Facts
Billie and Jackie Lewis purchased a mobile home from WLS, Inc. To effectuate the purchase, Billie Lewis executed a purchase agreement and an installment agreement. The installment agreement, which contained an arbitration provision, was subsequently assigned to Conseco (formerly known as Green Tree Financial Corporation), which financed the purchase.
Approximately one year after purchasing the mobile home, the Lewises sued Conseco and the WLS defendants, asserting claims of fraud and suppression, breach of express warranty, breach of implied warranty, and violations of the Magnuson-Moss Warranty Act. Many of the claims — most notably the breach-of-express-warranty and Magnuson-Moss claims — were purportedly asserted against Conseco through the following provision found in the installment agreement, which is required to be in the agreement pursuant to a Federal Trade Commission ("FTC") rule,16 C.F.R. § 433.2:
 "Any holder of this consumer credit contract is subject to all claims and defenses which the debtor could assert against the seller of the goods or services obtained pursuant hereto or with the proceeds hereof."
Both Conseco and the WLS defendants filed motions to compel arbitration. The trial court initially granted both motions, but, following the Lewises' filing of a motion to alter, amend, or vacate, which relied primarily on our decision in Ex parte Thicklin,824 So.2d 723 (Ala. 2002), the trial court vacated its order compelling arbitration with respect to the WLS defendants. The Lewises appeal the grant of Conseco's motion to compel arbitration (no. 1010772), and the WLS defendants appeal the denial of their similar motion (no. 1010752).
 II. Standard of Review
Our analysis in this case is guided by the following standard of review:
 "This Court reviews de novo the [grant or] denial of a motion to compel arbitration. Parkway Dodge, Inc. v. Yarbrough, 779 So.2d 1205 (Ala. 2000). A motion to compel arbitration is analogous to a motion for a summary judgment. TranSouth Fin. Corp. v. Bell, *Page 923 739 So.2d 1110, 1114 (Ala. 1999). The party seeking to compel arbitration has the burden of proving the existence of a contract calling for arbitration and proving that that contract evidences a transaction affecting interstate commerce. Id. `[A]fter a motion to compel arbitration has been made and supported, the burden is on the non-movant to present evidence that the supposed arbitration agreement is not valid or does not apply to the dispute in question.' Jim Burke Automotive, Inc. v. Beavers, 674 So.2d 1260, 1265 n. 1 (Ala. 1995) (opinion on application for rehearing)."
Fleetwood Enters., Inc. v. Bruno, 784 So.2d 277, 280 (Ala. 2000) (emphasis omitted).
 III. Analysis
The Federal Arbitration Act, 9 U.S.C. § 1 et seq., "mandates the arbitration of claims encompassed by an arbitration clause that is contained in a binding contract that involves interstate commerce." Exparte Conference America, Inc., 713 So.2d 953, 955 (Ala. 1998). We have held that a contract "involves" interstate commerce when the underlying transaction "substantially affects" interstate commerce. Sisters of theVisitation v. Cochran Plastering Co., 775 So.2d 759, 761-62 (Ala. 2000). We now turn to consider whether, under these principles, Conseco and the WLS defendants are entitled to arbitrate the claims asserted against them by the Lewises.
 A. The Lewises v. Conseco
The Lewises make three arguments against arbitration with respect to Conseco. First, they argue that Conseco failed to demonstrate that the transaction "substantially affected interstate commerce." Second, they argue that because there was allegedly no "substantial performance" of the installment agreement on the part of WLS, Inc., the trial court erred in "specifically enforcing" the arbitration provision. Third, the Lewises assert that the breach-of-express-warranty and Magnuson-Moss claims asserted against Conseco "through" the FTC rule provision are not subject to arbitration under Ex parte Thicklin, supra.
 1. Interstate Commerce
In support of its motion to compel arbitration, Conseco submitted the affidavit of Robert D. Eller, regional manager of Conseco Finance Corporation-Alabama, which is described in the affidavit as an affiliate
of Conseco Finance Corporation. Eller's affidavit states, in pertinent part:
 "2. The Complaint identifies Conseco Finance Corp.-Alabama, whose correct name is Conseco Finance Corp. (`Conseco'), as one of the Defendants in this action. Conseco was at the time of the transaction made the basis of this suit, a corporation organized and existing under the laws of the State of Delaware and maintaining its principal place of business in St. Paul, Minnesota. Conseco, through its affiliates, is engaged, among other things, in consumer finance operations in the fifty United States, including the State of Alabama.
 "3. The customer file in this matter reflects that the Plaintiffs entered into an agreement with WLS, Inc. to purchase a mobile home. In connection with the financing of this purchase, the Plaintiffs executed a Retail Installment Contract, a copy of which is attached hereto as Exhibit A. The Retail Installment Contract contains an arbitration provision.
 "4. The financing transaction with respect to the purchase of the mobile home by the plaintiffs was handled by the Montgomery office of Conseco. The installment contract signed by the Plaintiffs indicates that the assignee was *Page 924 
Green Tree Financial Corp. with its address at 324 Interstate Park Drive, Montgomery, Alabama. Checks drawn by Conseco in connection with the financial transaction, such as the payment of the mobile home dealer, were drawn on a bank account in East Grand Forks, Minnesota. The mobile home which is the subject of this action was financed and the payments made by the Plaintiffs on the purchase were to be, and have been, mailed to an address in Louisville, Kentucky."
The Lewises contend that this affidavit is insufficient to demonstrate that the transaction had a "substantial effect" on interstate commerce as required under Sisters of the Visitation; we disagree. The undisputed facts in this case are almost identical to those in Green Tree FinancialCorp. v. Channell, 825 So.2d 90 (Ala. 2002). In that case, we reversed a trial court's denial of the motion to compel arbitration filed by Green Tree (now known as Conseco):
 "The record before us indicates that Green Tree is a Delaware corporation whose principal place of business is in Minnesota and that the installment agreement was assigned to Green Tree in exchange for funds it provided; those funds were drawn on an out-of-state financial institution. Additionally, the Channells mailed their installment payments to Green Tree at an address in Louisville, Kentucky.
 "These facts are similar to those presented in Green Tree Financial Corp. v. Lewis, 813 So.2d 820 (Ala. 2001), and American General Finance, Inc. v. Branch, 793 So.2d 738 (Ala. 2000). In both Lewis and Branch we concluded that the subject transactions had had a substantial effect on interstate commerce based upon evidence that the lender in each case was a foreign corporation with headquarters outside of Alabama, that the loan proceeds had moved from outside Alabama to Alabama, and that payments made by the customers to the lender were sent out of the state of Alabama. Lewis, 813 So.2d at 824; Branch, 793 So.2d at 747. Based on the facts presented here and relying on our holdings in Lewis and Branch, we conclude that Green Tree has met its burden of proving that the transaction made the subject of this litigation substantially affected interstate commerce and has thus triggered application of the Federal Arbitration Act (`FAA')."
825 So.2d at 94-95.
Although the Lewises make several arguments in an attempt to attack Eller's affidavit as "vague," we are not persuaded. The Lewises do not point to any evidence that contradicts Eller's statements regarding Conseco's corporate status and structure or its statement that payment to WLS, Inc., was made from a bank in Minnesota, and the Lewises do not dispute that they submitted several payments to an address in Kentucky. Accordingly, we see no legitimate basis to reach a result in this case different from the one reached in Channell with regard to the interstate-commerce question.[2]
 2. Specific Enforcement
The Lewises argue that the trial court erred in specifically enforcing the arbitration agreement because, it says, WLS, Inc., breached the installment agreement. The Lewises rely on Ala. Code 1975, § 8-1-40, which provides: *Page 925 
 "Specific performance cannot be enforced against a party to a contract in any of the following cases:
 "(1) If he has not received an adequate consideration for the contract;
"(2) If it is not, as to him, just and reasonable;
 "(3) If his assent was obtained by the misrepresentation, concealment, circumvention or unfair practices of any party to whom performance would become due under the contract or by any promise of such party which has not been substantially fulfilled; or
 "(4) If his assent was given under the influence of mistake, misapprehension, or surprise; except, that where the contract provides for compensation in case of mistake, a mistake within the scope of such provision may be compensated for and the contract specifically enforced in other respects if proper to be so enforced."
Specifically, the Lewises contend that § 8-1-40 applies and precludes the enforcement of the arbitration provision because "WLS, Conseco's assignor, did not substantially perform its obligations [under the installment agreement] to Lewis, and Lewis' consent was obtained by `misrepresentation, concealment, circumvention or unfair practices.'" Lewises' brief at 23.
However, if the Lewises' challenge is in reality a challenge to the enforceability of the installment agreement as a whole, then that challenge is properly resolved by an arbitrator — not by the court. Green Tree Fin. Corp. v. Wampler, 749 So.2d 409, 413 (Ala. 1999) (holding that an attack on the enforceability of a security agreement must be arbitrated). Wampler provides the general rule for determining the proper forum for the resolution of claims when an arbitration provision is involved:
 "When deciding the threshold issue whether the court or the arbitrator decides a challenge to the enforcement of an arbitration clause entered into by the parties, the court first must satisfy itself that the terms of the arbitration clause are broad enough to permit the arbitrator to decide issues of arbitrability. However, a determination that, by the terms of the arbitration clause, the arbitrator is to decide issues of arbitrability does not end the inquiry. Where the attack is addressed to the arbitration clause itself, as opposed to the contract as a whole, the court, and not the arbitrator, resolves the issue. But, when the challenge goes to the whole contract, a contract that happens to contain an arbitration clause, the issue of enforceability of the contract, including the arbitration clause, is for the arbitrator to decide."
749 So.2d at 413.[3] When engaging this analysis, we "`look beyond thead hoc arguments of counsel in order to determine whether [the plaintiff's] claim actually bears upon the entire agreement' or just the arbitration clause." NationsBanc Invs., Inc. v. Paramore, 736 So.2d 589,591 (Ala. 1999) (quoting Anniston Lincoln Mercury Dodge v. Conner,720 So.2d 898, 901-02 (Ala. 1998)).
In this case, it is apparent that the Lewises challenge the enforceability of the installment agreement as a whole, not merely the arbitration provision. If § 8-1-40 were truly applicable, it would preclude Conseco from seeking the specific *Page 926 
enforcement of any provision of the agreement, not merely the arbitration provision.
The Lewises creatively, but erroneously, attempt to construe their challenge to the enforceability of the contract as a challenge to the arbitration provision alone, arguing that Conseco currently seeks only
the specific enforcement of the arbitration provision and that the remaining contractual provisions would be unaffected because they havenot been asserted. In this respect, the Lewises simply mischaracterize the relevant analysis, which is properly directed at the extent andpossible effect of the Lewises' challenge on the whole contract rather than on the particular provision — here the arbitration provision — sought to be enforced.
Based upon the above, we hold that the Lewises' arguments concerning specific performance raise issues that are properly resolved by an arbitrator.
 3. The FTC rule, the Magnuson-Moss Warranty Act, and Ex parte Thicklin.
The Lewises argue that their claim under the Magnuson-Moss Warranty Act and their breach-of-express-warranty claim against Conseco are not subject to arbitration under our decision in Ex parte Thicklin. However, assuming that those claims could properly be brought against Conseco, those claims are derivative; that is, they are asserted through the language from the installment agreement quoted above, which, pursuant to an FTC rule (16 C.F.R. § 433.2), must appear in such an agreement. Therefore, the claims purportedly[4] would be viable against Conseco only to the extent that they are viable against the WLS defendants. Because, as discussed below, we hold that the Lewises have failed to demonstrate that the WLS defendants gave them a "written warranty," we hold that Ex parte Thicklin — in which we held that, where a written warranty had been given, Magnuson-Moss and express-warranty claims could not be arbitrated unless the arbitration provision at issue was included in that written warranty — is inapplicable. See Part B.2. below. Therefore, because Ex parte Thicklin is inapplicable to the claims against the WLS defendants, it is inapplicable to the Lewises' claims against Conseco.
 B. The WLS defendants v. The Lewises
The WLS defendants contend that the trial court erred in vacating its order compelling arbitration with respect to the Lewises' claims against them because, they say, the necessary requirements of 1) an agreement to arbitrate and 2) a substantial effect on interstate commerce have been satisfied. The Lewises contend that the trial court acted appropriately, and they raise many of the same arguments they advanced against Conseco; namely, 1) that the WLS defendants failed to demonstrate *Page 927 
the requisite effect on interstate commerce, 2) that specific enforcement of the arbitration provision is not appropriate because of certain breaches of the installment agreement, and 3) that the arbitration provision cannot be enforced because it was not disclosed in a written warranty. Because we find the Lewises' specific-enforcement argument unpersuasive for the reasons given above, we address only the first and third arguments raised by the Lewises in support of the trial court's ruling.
 1. Interstate Commerce
In support of their motion to compel arbitration, the WLS defendants relied upon the affidavit of Larry Smith; however, the trial court struck Smith's affidavit as untimely; it therefore did not consider it. The Lewises argue that while the WLS defendants now rely upon Conseco's involvement in the transaction to establish the requisite connection to interstate commerce (as supported by Eller's affidavit), the WLS defendants never sufficiently pursued this argument before the trial court.
However, a review of the WLS defendants' response to the Lewises' motion to alter, amend, or vacate the trial court's original order granting the WLS defendants' motion to compel arbitration reveals the following assertions:
 "3. As the Motions to Compel Arbitration granted by this Honorable Court have substantiated, the sales transaction involving the purchase of the manufactured home in question had a substantial effect on interstate commerce, such that the arbitration provision in the Retail Installment Contract was properly enforced by this Court.
 "4. Defendants cite the Court to the Alabama Supreme Court's decision in Green Tree Financial Corp., n/k/a Conseco Financial Corp. v. Lewis, [813 So.2d 820] (Ala. 2001), a copy of which is attached for the Court's convenience. In that case, involving the same Delaware corporation that is the co-defendant in the case at bar, the arbitration provision in the installment contract was found to be enforceable even though the sale took place in Alabama between Alabama buyers and an Alabama dealer, by virtue of the lender, Conseco, being a Delaware corporation with its principal place of business in Minnesota, payments remitted by checks drawn on out-of-state banking institutions, and payments mailed by the purchasers to out-of-state addresses, as well as specific authorization in the contract to assign the installment contract to the lender, Conseco. Such factors were deemed sufficient to constitute the requisite `substantial effect on interstate commerce' required for enforcement of the arbitration provision in the installment contract under the Federal Arbitration Act.
 "5. The Alabama Supreme Court recognized in Lewis, supra, that the arbitration provision not only embraced the installment contract itself, but also "`all relationships which result(ed) from (the) Contract."' [813 So.2d at 824.] As a result, the facts supporting the conclusion that the sales transaction in that case were found to have a substantial effect upon interstate commerce, as they do in the case at bar, including those facts arising from the assignment by the retailer to the finance company, Conseco, which the Alabama Supreme Court held to be `quite relevant' to the substantial nexus with interstate commerce. [813 So.2d at 824.]
 "6. The relationships between the corporations providing the substantial nexus with interstate commerce and making the Order Compelling Arbitration appropriate in Lewis, supra, make this *Page 928 
Court's Order Compelling Arbitration appropriate, and the Plaintiff's Motion to Alter, Amend or Vacate said Order is due to be denied.
 "7. Under substantially the same facts as in the case at bar, the Alabama Supreme Court held in Lewis, supra, that Conseco Financial Corp. (f/k/a Green Tree Financial Corp.) carried its burden of establishing that the sales transaction had a substantial effect on interstate commerce, and arbitration was ordered in that case and upheld, as it should be in this case, based upon the same rationale by which the Alabama Supreme Court rejected plaintiff's challenge to arbitration."
The WLS defendants, while perhaps not formally stating that they were incorporating Eller's affidavit in defense of their motion to compel arbitration, nonetheless thoroughly described how, under Alabama law, Conseco's involvement in the single transaction at issue substantially affected interstate commerce, a conclusion with which we today concur. By specifically basing their argument on materials already before the trial court — i.e., by referencing the trial court's attention to both
motions to compel arbitration, and by specifically arguing that Conseco's involvement satisfied the interstate-commerce requirement for the entire transaction — the WLS defendants effectively incorporated Conseco's motion to compel arbitration in support of their own with regard to the interstate-commerce question.
It is undisputed that Conseco's involvement was part of the underlying transaction; in fact, such a conclusion would be difficult to dispute under the facts before us. When examining whether a transaction substantially affects interstate commerce in the arbitration context, we do not employ a "divide and conquer" technique; rather, we examine all facets of a transaction. See Lewis, 813 So.2d at 824 (stating that "[w]e cannot employ an unrealistically narrow construction of the `transaction' concept so as to limit our scrutiny to the events transpiring at the time of the sale [of a manufactured home]," and that, with respect to the interstate-commerce question, "even those facts arising from the assignment by [the seller of the manufactured home] to Green Tree, are quite relevant"). Based on the above, we hold that — as we did with Conseco — the WLS defendants have met their burden of demonstrating that the transaction substantially affected interstate commerce.
 2. Application of Ex parte Thicklin to the Lewises' Magnuson-Moss and express-warranty claims
The WLS defendants contend, contrary to the assertions of the Lewises, that the Lewises cannot use our recent decision in Ex parte Thicklin,supra, as a defense to arbitration because, they say, that case does not apply to these facts. We agree.
Ex parte Thicklin involved the sale of a mobile home. The buyer was given a written warranty that did not mention arbitration. The buyer sued the seller and the manufacturer, asserting various claims, including claims alleging Magnuson-Moss and express-warranty violations. Relying onCunningham v. Fleetwood Homes of Georgia, Inc., 253 F.3d 611 (11th Cir. 2001), we held that because the written warranty did not disclose to the buyer any arbitration requirement as it was required to do by the Magnuson-Moss Warranty Act, the trial court could not compel the buyer to arbitrate his Magnuson-Moss and express-warranty claims. Ex parteThicklin, 824 So.2d at 728.
The disclosure requirements mentioned in Ex parte Thicklin applied specifically to a "written warranty," a term defined in the Magnuson-Moss Warranty Act as follows: *Page 929 
"(6) The term `written warranty' means —
 "(A) any written affirmation of fact or written promise made in connection with the sale of a consumer product by a supplier to a buyer which relates to the nature of the material or workmanship and affirms or promises that such material or workmanship is defect free or will meet a specified level of performance over a specified period of time, or
 "(B) any undertaking in writing in connection with the sale by a supplier of a consumer product to refund, repair, replace, or take other remedial action with respect to such product in the event that such product fails to meet the specifications set forth in the undertaking, which written affirmation, promise, or undertaking becomes part of the basis of the bargain between a supplier and a buyer for purposes other than resale of such product."
15 U.S.C. § 2301(6). In order to invoke Ex parte Thicklin as a defense to arbitration, a party resisting arbitration would have to demonstrate initially that a written warranty of the type described in15 U.S.C. § 2301(6) had been issued by the party seeking arbitration.
In this case, the Lewises have offered no written warranty given by the WLS defendants. In fact, the record reflects that the WLS defendants not only gave no written warranties, but that both express and implied warranties were specifically (and repeatedly) disclaimed in both the purchase agreement and the installment agreement.
In their brief to this Court, the Lewises argue that the existence of a written warranty is evidenced by 1) the existence of a one-year warranty from the manufacturer mentioned in the purchase agreement, and 2) the indication in both the purchase agreement and the installment agreement that the mobile home purchased by the Lewises was "new." However, neither of these facts bolsters the Lewises' argument. First, the one-year warranty mentioned in the purchase agreement was not given by the WLS defendants, but by the manufacturer — a fact made clear by the following language in the purchase agreement:
 "11. MANUFACTURER'S WARRANTIES. I UNDERSTAND THAT THERE MAY BE WRITTEN WARRANTIES COVERING THE UNIT PURCHASED, OR ANY APPLIANCE(S) OR COMPONENT(S), WHICH HAVE BEEN PROVIDED BY THE MANUFACTURER OF THE UNIT OR MANUFACTURER OF THE APPLIANCE(S) OR COMPONENT(S). YOU WILL GIVE ME COPIES OF ANY AND ALL WRITTEN WARRANTIES SUPPLIED BY THE MANUFACTURERS. DELIVERY BY YOU TO ME OF THE WARRANTY BY THE MANUFACTURER OF THE UNIT PURCHASED, OR ANY APPLIANCE(S) OR COMPONENT(S) DOES NOT MEAN YOU ADOPT THE WARRANTY(S) OF SUCH MANUFACTURERS. I ACKNOWLEDGE THAT THESE EXPRESS WARRANTIES MADE BY THE MANUFACTURER(S) HAVE NOT BEEN MADE BY YOU EVEN IF THEY SAY YOU MADE THEM OR SAY YOU MADE SOME OTHER EXPRESS WARRANTY. YOU ARE NOT AN AGENT OF THE MANUFACTURER(S) FOR WARRANTY PURPOSES EVEN IF YOU COMPLETE, OR ATTEMPT TO COMPLETE REPAIRS FOR THE MANUFACTURER(S).
". . . .
 "I UNDERSTAND THAT THERE IS A ONE YEAR WARRANTY ON *Page 930 
THE CONSTRUCTION OF THE MOBILE HOME FROM THE MANUFACTURER. I ALSO UNDERSTAND THAT THIS WARRANTY DOES NOT COME FROM [WLS, Inc.], I HAVE PERSONALLY EXAMINED THE MOBILE HOME. . . ."
Second, even if the indication that the mobile home was "new" could be construed to be a warranty under state law, see Ala. Code 1975, §7-2-313 (an issue on which we express no opinion), it would not fit either definition of a "written warranty" under the Magnuson-Moss Warranty Act. It certainly does not fit the definition in § 2301(6)(B), and, with regard to 6(A), a statement that a product is "new" simply does not "affirm or promise that [the] material or workmanship [in the mobile home] is defect free or will meet a specified level of performance over a specified period of time." Because the Lewises did not produce a written warranty given by the WLS defendants, any defense to arbitration stemming from our decision in Ex parte Thicklin is unavailable.
 IV. Conclusion
Based upon the above, as to the appeal from the trial court's order granting Conseco's motion to compel arbitration, we affirm; as to the appeal from the trial court's order denying the WLS defendants' motion to compel arbitration, we reverse and remand for further proceedings consistent with this opinion.
1010772 — AFFIRMED.
1010752 — REVERSED AND REMANDED.
See, Lyons, Brown, Harwood, Woodall, and Stuart, JJ., concur.
Moore, C.J., dissents.
[1] Larry Smith is the president of WLS, Inc.; Gail Smith and Lisa Melendy are WLS, Inc., employees.
[2] Our decision regarding the interstate-commerce issue precludes the need to address Conseco's alternative argument that this case involves "persons or things" in interstate commerce. See Selma Med. Ctr., Inc. v.Fontenot, 824 So.2d 668 (Ala. 2001).
[3] There is no dispute as to the breadth of the arbitration provision at issue, which covers "all disputes, claims or controversies arising from or relating to this Agreement or the relationships which result from this Agreement, or the validity of this arbitration clause or the entire Agreement."
[4] Conseco argues that, even if the Magnuson-Moss Warranty Act applies to the WLS defendants, application of the Act to Conseco through the FTC rule at issue is improper. See Lindsey v. Ed Johnson Oldsmobile, Inc., No. 95 C 7306 (N.D.Ill., September 13, 1996) (not published in F. Supp.) ("To impose liability [through the FTC rule] against an assignee under [the Magnuson-Moss Warranty Act] where none was otherwise contemplated would be contrary to the congressional intent underlying such statutes."); Results Oriented, Inc. v. Crawford, 245 Ga. App. 432,538 S.E.2d 73, 81 (2000) (holding, in a challenge to the enforceability of an arbitration provision in an installment agreement assigned by a mobile home dealer to Green Tree (now Conseco), that the Magnuson-Moss Warranty Act did not apply to Green Tree because "Green Tree is neither a `supplier, warrantor, or service contractor' covered by that Act." (quoting 15 U.S.C. § 2310(d), and (f); citing 15 U.S.C. § 2301
(4),(5), and (8) (defining "supplier," "warrantor," and "service contract"))). However, given our disposition in this case, we do not reach this issue.